UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MONTY BRAD JETT**, <br> 139 Ferry Road <br> Fredericksburg, VA 22405, <br><br> Plaintiff <br><br> v. <br><br> **LORETTA E. LYNCH** <br> U.S. Attorney General <br> U.S. Department of Justice <br> 950 Pennsylvania Avenue, NW <br> Washington, DC 20530-0001, <br><br> Defendant | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

# COMPLAINT
## (DECLARATORY JUDGEMENT AND EQUITABLE RELIEF)

1. Plaintiff Monty Brad Jett, by counsel, brings this action against his former employer, the Federal Bureau of Investigation ("FBI"), requesting judicial review of the summary action of the FBI terminating his employment with defamatory statements and in a manner that injured him by damaging his reputation and by effectively diminishing and/or foreclosing Plaintiff's right to pursue his career in law enforcement. The FBI's summary dismissal procedure accompanied by written defamatory and career-ending allegations deprived Plaintiff of his Fifth Amendment rights to due process by depriving him of his liberty interest, e.g., by accusing him, *inter alia*, of engaging in criminal

1

5. Defendant Loretta E. Lynch is the Attorney General of the United States and as such he is the head of the Department of Justice. The FBI is a subordinate agency of the Department of Justice. As such, Ms. Lynch is also the head of the FBI and is responsible for the personnel actions, omissions and practices of the FBI. Mr. Lynch is here sued only in his official capacity as head of the FBI.

## STATEMENT OF THE CLAIM

6. Plaintiff was employed from March 12, 1978 until August 2, 2012 by the FBI, which is an agency within the U.S. Department of Justice.

7. On or about May 19, 2011, the Inspection Division (INSD) of the FBI commenced an administrative inquiry into the alleged misconduct by Plaintiff.

8. On June 2, 2011, Plaintiff received a written notice of the administrative inquiry.

9. The Internal Investigation Section (IIS) of INSD commanded Plaintiff to appear on June 28, 2013 at a compelled interview and answer questions. The investigators prepared a draft written statement answering the investigators' questions for Plaintiff to sign that same day. Plaintiff reviewed and made corrections to the draft statement, and signed that statement, which answered the investigators' questions. Plaintiff was not presented with or allowed to see documents or evidence prior to or during the investigative interview, but was commanded to answer oral questions immediately based upon his memory only. That signed statement was placed in the IIS investigation file.

10. On information and belief, on or a few days before July 27, 2012, the FBI Office of Professional Responsibility ("OPR"), a department within the FBI, received the IIS investigation file. OPR is separate from INSD. OPR has among others the task of adjudicating internal investigation cases and imposing discipline upon FBI employees. OPR has the power therefore to decide whether an alleged offense is substantiated against an employee, and has the power to impose penalties ranging from "oral reprimand" through days of unpaid suspension and ultimately "dismissal."

11. The decision maker for FBI OPR disciplinary decisions at all relevant times was and is Assistant Director (AD) Candice Will. Directly reporting to her are two unit chiefs.

12. Almost immediately after receiving the investigation file, OPR Unit Chief Timothy Dowling wrote and sent an email on Friday, July 27, 2012 to AD Will indicating "Jett plans to retire in early September, and so if you to want to fire Jett, it will need to be a summary dismissal" and "Jett's story doesn't hold water."

13. The OPR Report of Investigation (ROI) in Plaintiff's case was completed on Monday, July 30, 2012 – three calendar days after the July 27, 2012 email. The OPR letter summarily dismissing Plaintiff Mr. Jett was prepared and was signed on Tuesday, July 31, 2012 (the "OPR Letter").

14. The time to prepare the ROI and the OPR discipline letter could in many cases take 30 days. On information and belief, Plaintiff's case was processed by OPR, start to finish, in about one calendar week.

15. On or about August 2, 2012, Plaintiff received the OPR Letter summarily dismissing him from federal employment. The OPR Letter notified him that he had no rights to any direct appeal of the decision. In disciplinary cases not dubbed "summary dismissal," the accused employees facing penalties imposing unpaid days of suspension or dismissal are afforded a right to an internal administrative procedure. Plaintiff here was denied that procedural right.

16. Plaintiff was eligible to retire and receive an immediate retirement annuity under the Federal Employee Retirement System or equivalent system, starting on September 2, 2012, his 55th birthday. The summary dismissal one month prior to his 55th birthday, despite his approximately 34 years of unbroken federal service, meant that he would not receive the immediate annuity and would be eligible for an annuity only upon reaching age 62.

## LEGAL CAUSE OF ACTION

## (Constitutional Due Process Rights Violation)

17. Paragraphs 1 through 16 inclusive are incorporated from above in this Complaint by reference here as though restated in full.

18. In the OPR Letter, the FBI recklessly or intentionally and falsely defamed Plaintiff by accusing him, *inter alia*, of engaging in misdemeanor and/or felony criminal misconduct, of lacking candor under oath, of dishonesty with police and other authorities, and of willfully and intentionally violating FBI rules and regulations.

19. Defendant (FBI) relied upon the allegations of the OPR Letter and other file materials to remove Plaintiff from his professional career of over 34 years without affording him notice of all the allegations, disclosing to him the evidentiary support for the allegations, and giving him any opportunity to refute the allegation or to clear his reputation and good name.

20. AD Will relied upon the allegations of the OPR Letter and other file materials to declare in an unrelated administrative proceeding on June 4, 2014, that Plaintiff "is a crook and a liar."

21. Via the OPR Letter and other documents in Plaintiff's personnel file Defendant recklessly or intentionally used false and defamatory statements to destroy Plaintiff's reputation in his workplace, and to remove Plaintiff from his professional law enforcement position and federal career of more than 34 years.

22.     On information and belief, the OPR Letter has been released to FBI entities outside of OPR, including but not limited to the FBI Security Division, the FBI Human Resources Division, one or more FBI field offices, and one or more state or commonwealth entities.

23.     The OPR Letter and its contents imposed a stigma upon Plaintiff and damaged Plaintiff's reputation and standing in the community and in his profession by asserting, *inter alia*, that he has a criminal conduct history, that he violated the rules and regulations of his law enforcement employers, that he is dishonest, untrustworthy, notorious, and unreliable as an employee and especially as a law enforcement professional.

24.     On information and belief, Defendant used the OPR Letter to interfere with Plaintiff's ability to obtain unemployment insurance benefits, and to interfere with his ability to obtain severance benefits that he would have otherwise been entitled to.

25.     If or when Plaintiff applies for federal employment as a law enforcement officer or agent with another federal agency, that agency would have access to the OPR Letter and other documents in Plaintiff's personnel file. In that event, the defamatory content of the OPR Letter and the other documents would stigmatize Plaintiff and effectively foreclose Plaintiff from any such employment.

26.     If or when Plaintiff applies for federal employment that requires a security clearance, the prospective federal employer would have access to the OPR Letter and

other documents in Plaintiff's personnel file and/or other employment-related files containing the defamatory statements. The defamatory contents of the Letter and other such files and materials will interfere with and likely foreclose Plaintiff from obtaining a security clearance.

27. If or when Plaintiff applies for and/or interviews for employment with a government or private sector employer, Plaintiff may be required to reveal the defamatory allegations and statements of the OPR Letter. Under those circumstances, the OPR Letter will undermine his employment opportunity or foreclose such opportunity altogether.

28. The OPR Letter and documents based upon that Letter have interfered with Plaintiff's ability to be reemployed by Defendant or to retire from federal employment in good standing and thereby obtain the immediate annuity to which he would have otherwise been entitled, and has interfered with and foreclosed Plaintiff's ability to obtain comparable employment within the federal sector and within the private sector.

29. Plaintiff believes, anticipates or knows that the very act of revealing the fact of being dismissed or summarily dismissed by the FBI to a potential employer, carrying with it the implication of having been dismissed for especially egregious misconduct, will result in rumors and other undocumented communications among persons in his field and other potential employers that will effectively destroy his ability to get jobs in his field or even in other fields, and Plaintiff will have no opportunity or forum in which to rebut unfounded beliefs held by other persons and employers.

30. Defendant's conduct surrounding the summary dismissal, and Defendant's preparation and dissemination of the OPR Letter and other defamatory documents, extinguished Plaintiff's good name and reputation and severely limited his ability to provide for his family which caused him severe personal hardship and anxiety, and substantially contributed to loss of his health. Defendant's conduct also resulted in the denial of Defendant his entitlement to an immediate annuity that otherwise would have been payable to him upon retirement on or after his 55th birthday.

WHEREFORE, Plaintiff requests this Court to adjudge and issue an order:

(A) Declaring Defendant deprived Plaintiff of due process under the Fifth Amendment by depriving him of his constitutionally protected liberty interest in a professional reputation without affording him due process;

(B) Appointing a magistrate or other official independent of Defendant and its departments to conduct a hearing at which Plaintiff is afforded the full opportunity to address and refute the allegations in the August 14 Letter, to include but not limited to the rights to testify on his own behalf, to assistance of counsel in all facets, to offer written and oral arguments, and to call and examine witnesses from within the FBI and from outside the FBI;

(C)     Awarding to Plaintiff the reasonable attorneys' fees and costs for having to retain an attorney to vindicate Plaintiff's rights to be free of deprivation of his Constitutional rights and liberty interests;

(D)     Awarding any other relief provided for under law that will make Plaintiff whole and/or will restore Plaintiff to the position he would have been in but for Defendant's unlawful conduct; and

(E)     Affording any other relief as the Court deems appropriate.

DATE: 6-8-15

_____
Richard L. Swick
DC Bar No. 936930
Richard W. Stevens
DC Bar No. 443320
Swick & Shapiro, P.C.
1101 15th Street, NW
Suite 205
Washington, DC 20005
(202) 842-0300 (phone)
(202) 842-1418 (fax)

10